UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARC-SCOT REALTY CORP. and
WILLIE CONSTR., LLC,

         Plaintiffs,    **REPORT AND**
                **RECOMMENDATION**
 -against-
                08–CV–4070 (KAM) (JMA)
PRAETORIAN INS. CO.
f/k/a THE HANNOVER INS. CO.,

         Defendant.
------------------------------------------------------------------X

A P P E A R A N C E S:

Jillian Menna
L'Abbate, Balkan, Colavita & Contini LLP
1001 Franklin Avenue
Garden City, New York 11530
(516) 294–8202
  *Attorney for Plaintiffs*

James F. O'Brien
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323–7000
  *Attorney for Defendant*

**AZRACK**, **United States Magistrate Judge:**

  In this diversity case, Marc-Scot Realty Corporation ("Marc-Scot") and Willie Construction, LLC ("Willie") (collectively, "plaintiffs") and Praetorian Insurance Company, formerly known as The Hannover Insurance Company, ("defendant") seek a judgment declaring whether defendant has a duty to defend and indemnify plaintiffs in a tort action pending in the Supreme Court of the State of New York, Kings County. By motions dated August 11, 2009, plaintiffs filed for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) and

1

defendant filed a cross-motion for summary judgment pursuant to the same. By Order dated October 26, 2009, the Honorable Kiyo A. Matsumoto referred the matter to me for a Report and Recommendation.

For the reasons set forth below, I respectfully recommend that the Court deny plaintiffs' motion for summary judgment and grant defendant's cross-motion for summary judgment. Specifically, I recommend that the Court dismiss the complaint and declare that defendant is not obligated to defend and indemnify plaintiffs or reimburse plaintiffs for the amounts expended in defense of the tort action because plaintiffs failed to timely notify defendant of the occurrence and suit without reasonable excuse.

## I. FACTUAL BACKGROUND

Marc-Scot, a New York corporation, owns property located at 722 Myrtle Ave., Brooklyn, New York ("the premises"). (Pls. 56.1 Stmt. ¶¶ 1–2; Def. 56.1 Stmt. ¶ 4.) Marc-Scot formed Willie, a New York corporation, to administer a construction project on the premises ("the project"). (Pls. 56.1 Stmt.¶ 2; Decl. of Melvin Fishman ("Fishman Decl.") ¶ 2.) The same principals and employees, led by Mel Fishman, work for both companies and share a principal place of business at 426 Willoughby Ave., Brooklyn, New York. (Pls. 56.1 Stmt.¶ 3; Pls. Ex. D ¶ 6; Fishman Decl. ¶ 1; Def. 56.1 Stmt. ¶ 3.)

Willie hired Arch Builders, Inc. ("Arch") as the general contractor. (Pls. 56.1 St. ¶ 4; Def. 56.1 Stmt. ¶ 5–6.) The parties agreed on August 6, 2005, that Arch would obtain insurance and name the "Owner, Owners [sic] Representative, and the Architect as additional insureds under the policy." (Pls. 56.1 St. ¶ 5; Pls. Ex. C art. 21; Def. 56.1 Stmt. ¶¶ 5–6.) Arch obtained from defendant the Commercial General Liability Policy #H86KP2018101 effective November 30, 2004, to November 30, 2005, and November 30, 2005, to November 30, 2006 (the "policy").

(Pls. Ex. N; Def. 56.1 Stmt. ¶ 7, 12; Def. Ex. 3.) Defendant is an Illinois corporation with a principal place of business at 500 Park Blvd., Itasca, Illinois. (Def. Ex. 3.)

On June 3, 2005, Lockton Risk Services Inc. ("Lockton"), defendant's agent, produced a Certificate of Liability Insurance effective November 30, 2004, to November 30, 2005, that names defendant as the insurer affording coverage, Arch as the named insured, and Willie as the certificate holder ("the 2004–05 Certificate"). (Pls. Ex. E(i); Def. Ex. 3.) The 2004–05 Certificate names as additional insureds Marc-Scot, Willie, architect Bricolage Design, Oxford, the City of New York, and the New York Health and Hospital Corporation. (Id.) On March 22, 2006, Lockton produced a Certificate of Liability Insurance effective November 30, 2005, to November 30, 2006, that names defendant as the insurer affording coverage, Arch as the named insured, Willie as the certificate holder, and Willie as the additional insured ("the 2005–06 Certificate"). (Pls. Ex. E(ii); Def. 56.1 Stmt. ¶¶ 9–14.)

Arch subcontracted with Ricardo's Iron Work, Inc. ("Ricardo's") and Ricardo's subcontracted with DeGraw Iron Work, Inc. ("DeGraw"). (Compl. ¶¶ 10–12.) On December 6, 2005, DeGraw employee Carlos Garcia ("Garcia") allegedly sustained bodily injuries after falling from a scaffold while working on the premises ("the occurrence"). (Index No. 6499/06; Pls. 56.1 St. ¶¶ 1, 6–7.) On February 28, 2006, Garcia and his wife commenced a tort action in the Supreme Court of the State of New York, Kings County, against Marc-Scot and Arch ("the tort action"). (Pls. 56.1 Stmt. ¶ 6; Pls. Ex. A; Def. 56.1 Stmt. ¶ 8.) Marc-Scot received notice of the action in May 2006. (Decl. of Jillian Menna, Esq. ("Menna Decl.") ¶ 9.) Marc-Scot contacted Arch's counsel by telephone and requested the name of Arch's insurer and a copy of the policy; Arch's counsel responded that no applicable coverage existed. (Menna Decl. ¶¶ 9–10, 20; Pls. Ex. T.)

Thereafter, Marc-Scot obtained the certificates of insurance that name defendant as the insurer providing coverage and state the name and address of Lockton; only the 2004–05 Certificate names Marc-Scot as an additional insured. (Menna Decl. ¶ 11; Pls. Exs. E(i), E(ii).) On April 6 and May 15, 2007, Marc-Scot notified Arch's counsel by letter of the expectation that Arch assume the defense and indemnification of Marc-Scot in the tort action as an additional insured under Arch's insurance policy; Marc-Scot attached the 2005–06 Certificate as evidence of this obligation. (Pls. 56.1 Stmt. ¶ 12, 14; Pls. Exs. F, H; Def. 56.1 Stmt. ¶¶ 9, 15–16; Def. Exs. 4–5.) On April 16, 2007, Arch served a response in the tort action representing that it did not have "any applicable insurance coverage." (Pls. 56.1 Stmt. ¶ 13; Ex. G ¶ 23.) On May 21, 2007, Arch's counsel responded to Marc-Scot by letter that as a law firm rather than an insurance company it would not assume the defense and indemnification of Marc-Scot. (Pls. 56.1 Stmt. ¶ 15; Pls. Ex. I; Def. 56.1 Stmt. ¶ 17; Def. Ex. 6.)

On July 6, 2007, Great American E&S Insurance Company ("Great American"), plaintiffs' insurance carrier, notified Arch by letter that its counsel refused to honor the defense and indemnification provisions of the contract and asked Arch to forward Marc-Scot's claim to defendant. (Pls. 56.1 Stmt. ¶ 16; Pls. Ex. J; Def. 56.1 Stmt. ¶ 18; Def. Ex. 7.) On July 30, 2007, Marc-Scot again mailed the 2005–06 Certificate to Arch's counsel. (Menna Decl. ¶ 20; Pls. Ex. L; Def. Ex. 8.) On August 3, 2007, Arch's counsel responded to Great American by letter stating, "Arch does not have any applicable insurance coverage," and directed Marc-Scot to contact "any insurance company you believe owes a duty to" Marc-Scot. (Pls. 56.1 Stmt. ¶ 19; Pls. Ex. M; Def. 56.1 Stmt. ¶ 20; Def. Ex. 9.) On August 14 and 16, 2007, Marc-Scot learned from Arch's counsel by telephone that defendant's policy was "Interiors Only" and requested a complete copy of the policy. (Pls. 56.1 Stmt. ¶¶ 20–21; Pls. Exs. N–P; Def. 56.1 Stmt. ¶¶ 21–22;

Def. Exs. 10–12.) Marc-Scot received a copy by email on November 15, 2007, and a copy by facsimile on February 25, 2008; Marc-Scot wrote Arch's counsel on the later date complaining that Arch had yet to provide a copy of the policy and still maintains that Marc-Scot did not receive a copy until February 26, 2008. (Pls. 56.1 Stmt. ¶¶ 22–23; Menna Decl. ¶ 25; Pls. Exs. P–Q, T; Def. 56.1 Stmt. ¶¶ 23, 37–40; Def. Ex. 26.)

On March 6, 2008, Marc-Scot notified defendant by letter of the tort action. (Pls. 56.1 Stmt. ¶ 24; Pls. Ex. R; Def. 56.1 Stmt. ¶ 24; Def. Ex. 13.) On April 4, 2008, defendant responded to Marc-Scot by letter disclaiming coverage because defendant's policy did not cover Marc-Scot as an additional insured and Marc-Scot failed to provide timely notice of the occurrence and tort action. (Pls. 56.1 Stmt. ¶ 25; Pls. Ex. S; Def. 56.1 Stmt. ¶¶ 25–27; Def. Exs. 14–15.) On April 18, 2008, Marc-Scot notified defendant of the intent to seek a declaratory judgment on the grounds that defendant's policy covered Marc-Scot as an additional insured based on the 2004–05 Certificate and the untimely notice must be excused because Arch's counsel created a "justifiable lack of knowledge of the insurance coverage." (Pls. 56.1 Stmt. ¶ 26; Pls. Ex. T; Def. Ex. 16.) On May 27, 2008, Garcia amended the complaint in the tort action to include Willie among the defendants. (Pls. 56.1 Stmt. ¶ 7; Pls. Ex. D; Menna Decl. ¶ 8.) On June 11, 2008, Willie notified defendant by letter of the occurrence. (Def. 56.1 Stmt. ¶ 31; Def. Ex. 20.) The parties continued to dispute coverage. (Def. Exs. 17–19, 21–24.)

On October 6, 2008, plaintiffs filed this action seeking a declaration that at all relevant times defendant had and still has an immediate duty to defend and indemnify plaintiffs in the tort action. (Compl. ¶ 39, 45; Def. 56.1 Stmt. ¶ 1; Def. Ex. 1.) On August 11, 2009, plaintiffs filed a motion for summary judgment seeking the same, and defendant filed a cross-motion for summary judgment seeking a dismissal of the complaint and a declaration that defendant is not

obligated to defend and indemnify plaintiffs in the tort action or reimburse plaintiffs for the amounts expended in the defense. (Def. Mot. for Summ. J.)

## II. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law of the action determines which facts are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1988) (internal citations omitted); Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000).

"When parties make cross motions for summary judgment, the standard is the same as that for individual motions. The district court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "Cross-motions for summary judgment do not warrant the granting of summary judgment unless the court finds that one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." Paganucci v. New York, 785 F. Supp. 467, 474 (S.D.N.Y. 1992). "When the dispute hinges on contract interpretation, 'summary judgment may be granted when [the contract's] words convey a definite and precise meaning absent any ambiguity.'" Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)

(alteration in original); Mt. Hawley Ins. Co. v. Nat'l Builders LLC, No. 08–CV–5526, 2009 U.S. Dist. LEXIS 58215, at *5 (S.D.N.Y. June 30, 2009).

**B.    Choice of Law**

The parties in this diversity action do not dispute that New York law governs the insurance claim. Burt Rigid Box v. Travelers Prop. Cas. Corp., 302 F.3d 83, 92 (2d Cir. 2002) ("In a diversity case, federal courts generally apply the substantive law of the forum state."); Andy Warhol Found. for the Visual Arts, Inc. v. Feds. Ins. Co., 189 F.3d 208, 214 (S.D.N.Y. 1999) (finding that New York law applied where the insureds resided in New York, the claim arose in New York, and New York was the state most concerned with the outcome).

**C.    Duty to Defend**

The New York Court of Appeals has ruled that "the duty of an insurer to defend its insured arises whenever the allegations within the four corners of the tort complaint potentially give rise to a covered claim." Turner Constr. v. Kemper Ins. Co., 198 Fed. Appx. 28, 31–32 (2d Cir. 2006); Worth Constr. Co., Inc. v. Admiral Ins. Co., 10 N.Y.3d 411, 415 (N.Y. 2008). Defendant states in the Commercial General Liability Coverage Form ("CGLCF") of the policy, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking damages for bodily injury." (Def. Ex. 3, CGLCF, Section I, Insuring Agreement, ¶ 1(a).) This insurance applies to bodily injury "caused by an 'occurrence' that takes place in the 'coverage territory'" and "occurs during the policy period." (Id. at ¶ 1(b)(1), (2)) The policy defines an "occurrence" as an "accident" and the "coverage territory" as "the United States." (Id. at Section 5, ¶ 4(a), 13.)

Defendant has a duty to defend its insured in the tort action because Garcia alleged in the complaint that he sustained bodily injuries after falling from a scaffold while working for a subcontractor of Arch, the policy's named insured, at 722 Myrtle Ave., Brooklyn, New York, on December 6, 2005, during the policy period from November 30, 2005, to November 30, 2006.

### D.    Who is an "Additional Insured"

#### a. Marc-Scot

Both parties moved for summary judgment seeking a declaration of Marc-Scot's status as an additional insured under defendant's policy. If defendant's policy covered Marc-Scot as an additional insured, then defendant has an obligation to defend and indemnify Marc-Scot in the tort action.

A party seeking coverage under an insurance contract has the burden of proving the existence of coverage and the terms of the policy. Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004); Ramsteck v. Aetna Life Ins. Co., No. 08–CV–0012, 2009 U.S. Dist. LEXIS 53541, at *28 (E.D.N.Y. June 24, 2009). In a declaratory judgment action to declare the parties' rights under the insurance policy, New York courts place the initial burden on the party claiming to be an insured to submit evidentiary proof. Preferred Mut. Ins. Co. v. Ryan, 175 A.D.2d 375, 378 (3d Dep't 1991). A certificate of insurance does not constitute sufficient proof of coverage, as the certificate merely evidences a contract for insurance, not that the contract exists or insures a particular party. Horn Maint. Corp. v. Aetna Cas. & Sur. Co., 225 A.D.2d 443, 444 (1st Dep't 1996) ("On summary judgment, a certificate of insurance may raise an issue of fact, especially where additional factors exist favoring coverage, but it is not sufficient, standing alone . . . to prove coverage as a matter of law.")

### i. **Defendant's Policy**

Defendant's policy does not cover Marc-Scot as an additional insured. Defendant's policy defines an "insured" as "any person or organization qualifying as such under Section II – Who is an Insured." (Def. Ex. 3, CGLCF, Section I.) This section in its original form does not qualify additional insureds as an "insured." (Id. at Section II.) Defendant modified Section II three times to qualify additional insureds. First, defendant incorporated the endorsement, "Blanket Additional Insured," which states:

> WHO IS INSURED is changed to include as an insured ("insured") any person or organization named as an additional insured on a certificate of insurance issued by us or our agent, but only to the extent of their liability arising out of your operations while providing service for the additional insured.

(Def. Ex. 3.) Second, defendant incorporated the endorsement, "Additional Insured – Owners, Lessees, or Contractors – Automatic Status when Required in Construction Agreement with You," which states:

> Section II – Who is an Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured under the policy.

(Id.) Third, defendant incorporated the endorsement, "Contractors [sic] General Liability Extra Coverage," which states: "Any person or organization is an insured whom you are required by a written contract, agreement, or permit to add as an additional insured on your policy, but only with respect to liability for 'bodily injury' or 'property damage' . . ." (Id.) In sum, these three modifications extend defendant's coverage to any person or organization named as an additional insured on a certificate of insurance and whom a named insured agreed in writing to name as an additional insured.

There is no dispute that the 2005–06 Certificate fails to name Marc-Scot as an additional insured. Mel Fishman maintains that the omission constitutes a ministerial error because the 2004–05 Certificate names Marc-Scot as an additional insured and the project was ongoing. (Pls. 56.1 Stmt. ¶ 11; Fishman Decl. ¶ 4; Menna Decl. ¶ 12.) This argument fails to meet Marc-Scot's burden as the party claiming to be an additional insured because defendant drafted separate and distinct contracts to govern each policy period and the occurrence arose after the 2004–05 policy period expired. Mt. Vernon Fire Ins. Co. v. Riccobono, No. 98–CV–1213, 1999 U.S. Dist. LEXIS 15355, at *5 (S.D.N.Y. Sept. 28, 1999) ("Under settled New York law, coverage is not triggered . . . unless an injury takes place during the policy period."). Even if the 2005–06 Certificate named Marc-Scot as an additional insured, plaintiffs recognize that certificates of insurance do not constitute "an absolute reflection of coverage." (Pls. Reply at 5–6.) Plaintiffs cannot obtain a judgment as a matter of law based upon the certificates without additional factual support favoring coverage. Plaintiffs have not submitted any factual support to prove the existence of coverage under the terms of defendant's policy.

### ii. The Contract between Willie and Arch

Arch had no contractual obligation to name Marc-Scot as an additional insured. "[T]he New York approach to the interpretation of contracts of insurance is 'to give effect to the intent of the parties as expressed in the clear language of the contract.'" Mt. Vernon Fire Ins. Co. v. Belize N.Y., Inc., 277 F.3d 232, 236 (2d Cir. 2002). If the agreement sets forth the parties' intent clearly and unambiguously, the Court need not look to extrinsic evidence to determine the obligations under the contract. Fein v. Chi. Ins. Co., No. 01–CV–11386, 2003 U.S. Dist. LEXIS 12374, at *16 (S.D.N.Y. July 18, 2003). Even if a contract's terms are ambiguous, "[u]nder New York law, equivocal contract provisions are generally to be construed against the drafter."

Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 67 (2d Cir. 2000). "In cases of doubt or ambiguity, a contract must be construed most . . . favorably to a party who had no voice in the selection of its language." Fein, 2003 U.S. Dist. LEXIS 12374, at *18.

Willie drafted a General Construction Work contract for the project at 722 Myrtle Avenue. (Pls. Ex. C.) Article 21 of the contract states the general contractor's insurance obligations:

> Prior to commencing the Work, the Contractor shall obtain at his own cost and expense and maintain through the life of this Contract all insurance from insurance companies licensed in the State of New York, carrying a Best's financial rating of A or better, and shall provide evidence of such insurance to the Owner in such form as may be required and approved by the Owner. . . All polices [sic] and Certificates of Insurance shall name the Owner, the Owners [sic] Representative, and the Architect as additional insureds under the policy.

(Id. at art. 21.) Article 1 defines the "Owner" as "Willie Construction LLC, its agents, servants, employees, or designees, including the Owners Representative, as the case may be." (Id. at art. 1.) Article 1 defines the "Owner's Representative" as, in pertinent part, "Mel Fishman, Scot Fishman or any other person designated by Mel Fishman." (Id.) There is no evidence that Mel Fishman designated Marc-Scot as the Owner's Representative.

The definite and precise terms of the contract between Willie and Arch should be given their meaning. Marc-Scot established Willie to separate from Marc-Scot the administration of the construction project. The failure of the contract to reference Marc-Scot supports this intent. Willie drafted the contract to omit Marc-Scot, and Arch had no voice in this selection. Plaintiffs do not assert a differing intent or meaning of the contract's terms. Extrinsic evidence of the 2004–05 Certificate need not be considered to determine the obligations under the contract because the agreement sets forth the parties' intent clearly and unambiguously.

Plaintiffs failed to submit any evidentiary proof that the terms of defendant's policy or the contract between Willie and Arch provide coverage of Marc-Scot as an additional insured. Plaintiffs are not entitled to a judgment as a matter of law on this issue. Defendant has established that the definite and precise meaning of defendant's policy and the unambiguous contract language between Willie and Arch do not provide coverage of Marc-Scot as an additional insured. Defendant is entitled to judgment as a matter of law on this issue and the declaration that defendant's policy does not cover Marc-Scot as an additional insured.

### b. Willie

Plaintiffs seek a declaration that defendant's policy covers Willie as an additional insured. (Pls. Mem. Summ. J. at 14.) Defendant concedes that the 2005–06 Certificate names Willie as the certificate holder and an additional insured and Arch agreed in writing to name Willie as an additional insured. (Def. Mem. Summ. J. at 8.) Plaintiffs are entitled to judgment as a matter of law on this issue and the declaration that defendant's policy covers Willie as an additional insured.

### E.     Timely Notice of Potential Claim[1]

Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy. E. Baby Stores, Inc. v. Cent. Mut. Ins. Co., No. 08–CV–3368, 2009 U.S. App. LEXIS 15190, at *2 (2d Cir. July 9, 2009); Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987). Where an insurance policy requires an insured to provide an insurer with "as soon as practicable" notice of an occurrence, such notice must be provided within a reasonable period of

---

[1] Plaintiffs rely on Wausau Underwriters Ins. Co. v. QBE Ins. Corp., 496 F. Supp. 2d 357, 361 (S.D.N.Y. 2007), to assert that the timely notice requirement in an insurance policy does not apply to additional insureds. (Pls. Mem. Summ J. at 11–13.) The Wausau court permitted an additional insured to rely on notice given to the insurer by the named insured to excuse the additional insured's untimely notice. Wausau Underwriters Ins. Co., 496 F. Supp. 2d at 361. As Arch never notified defendant of the occurrence or tort action, plaintiffs cannot rely on Arch to excuse plaintiffs' untimely notice. Plaintiffs are not entitled to judgment as a matter of law on this issue.

12

time. E. Baby Stores, Inc., 2009 U.S. App. LEXIS 15190, at *3–4 (reviewing New York decisions that deemed unreasonable ten to fifty-three day delays in providing notice, and finding a thirty-six month delay similarly unreasonable). Failure to provide timely notice vitiates the insurance contract and permits the insurer to disclaim coverage regardless of prejudice. Id. at *3; Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 287 (2d Cir. 2003). The burden of proving timely notice of a claim falls on the insured. E. Baby Stores, Inc., 2009 U.S. App. LEXIS 15190, at *3; Green Door Realty Corp., 329 F.3d at 287 ("An insured . . . must exercise reasonable care and diligence and keep itself informed of accidents out of which claims for damages may arise.").

Defendant states in the Commercial General Liability Conditions of the policy, "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Def. Ex. 3, Section IV, ¶ 2(a).) The policy goes on to state, "If a claim is made or 'suit' is brought against any insured, you must immediately record the specifics of the claim or 'suit' and the date received and notify us as soon as practicable." (Id. at ¶ 2(b).)

Garcia allegedly sustained injuries in December 2005. Marc-Scot received notice of the tort action in May 2006. Plaintiffs obtained the certificates of insurance naming defendant as the insurer no later than April 2007. Marc-Scot notified defendant of the tort action in March 2008.[2] Willie notified defendant of the occurrence in June 2008. Despite the fact that Garcia added Willie as a defendant in the tort action in May 2008, Willie had an obligation as an additional insured under defendant's policy to notify defendant "as soon as practicable" after the occurrence. Willie's failure to provide notice to defendant until thirty months after the

---

[2] The date Marc-Scot notified defendant is irrelevant as defendant's policy does not cover Marc-Scot as an additional insured. Even if defendant's policy or Willie's contract named Marc-Scot as an additional insured, untimely notice provided twenty-seven months after the occurrence and eleven months after receiving the certificates of insurance naming defendant as the insurer constitutes an unreasonable delay as a matter of law, vitiates the insurance contract, and permits defendant to disclaim coverage regardless of prejudice.

13

occurrence and thirteen months after plaintiffs received the certificates of insurance constitutes an unreasonable delay as a matter of law, vitiates the insurance contract, and permits defendant to disclaim coverage regardless of prejudice.[3]

Yet, a notice-of-occurrence provision can be excused when an insured had a justifiable lack of knowledge of the insurance coverage. Mt. Vernon Fire Ins. Co. v. Abesol Realty Corp., 288 F. Supp. 2d 302, 314 (E.D.N.Y. 2003). To prevail on this exception, an insured must prove (a) ignorance of the available coverage and (b) reasonably diligent efforts to ascertain whether coverage existed and "protect [its] own interests upon receiving notice of a claim." Id. at 314 (internal quotation omitted) (citations omitted).

### a. **Ignorance of the Available Coverage**

Plaintiffs claim to have been ignorant of defendant's available coverage because Arch's counsel misrepresented the existence and scope of defendant's policy. (Pls. 56.1 Stmt. ¶ 26; Pls. Mem. Summ. J. at 9; Pls. Ex. T.) Plaintiffs point to several cases in which New York courts excused an insured's failure to provide timely notice because the insurer or defendant misrepresented the existence of coverage. State v. Zurich Ins. Co., 199 A.D.2d 916, 917 (3d Dep't 1993) (finding ignorance of available coverage where defendant advised plaintiff that insurer disclaimed coverage); Cicero v. Great Am. Ins. Co., 53 A.D.3d 460 (1st Dep't 2008) (finding ignorance of available coverage where defendant supermarket told slip-and-fall plaintiff that insurance did not exist); Chunn v. New York City Hous. Auth., 55 A.D.3d 437 (1st Dep't 2008) (finding ignorance of available coverage where insurer informed additional insured-plaintiff that occurrence was outside the scope of insurer's policy). These cases are factually

---

[3] Plaintiffs assert that the computation of "as soon as practicable" notice should begin when plaintiffs received a copy of defendant's policy from Arch's counsel. (Pls. Opp. to Def. Summ. J. at 13.) As plaintiffs admit obtaining the certificates of insurance that named defendant as the insurer no later than April 2007, the computation of "as soon as practicable" notice cannot begin later than April 2007.

14

inapplicable. Defendant never disclaimed coverage or mistakenly advised Marc-Scot about the existence and scope of its policy because neither the policy nor the contract between Willie and Arch required defendant to insure Marc-Scot. For the same reason, Arch had no duty to inform plaintiffs of defendant's coverage or bring to plaintiffs' attention the fact that the certificates of insurance name defendant as the insurer.[4]

The material facts are not in dispute. While plaintiffs chose to rely on the alleged misrepresentations by Arch's counsel, plaintiffs were not ignorant of defendant's available coverage as a matter of law because plaintiffs possessed the certificates of insurance that name defendant as the insurer.

   b. **Reasonably Diligent Efforts**

Plaintiffs catalogue their efforts to elicit information about defendant's coverage of Marc-Scot as an additional insured. (Pls. Mem. Summ. J. at 5–9; Pls. Opp. to Def. Summ. J. at 10–12.) When Marc-Scot first contacted Arch's counsel by telephone in May 2006, the tort action asserted claims against Arch and Marc-Scot, not Willie. Marc-Scot waited eleven months to contact Arch's counsel again about available coverage. Marc-Scot mailed the 2005–06 Certificate to Arch's counsel several times, yet failed to contact defendant or Lockton, whose address was printed on the Certificate. Arch served a response in the tort action representing that it did not have "any applicable insurance coverage." While the question to which Arch

---

[4] Defendant suggests that only unsophisticated insureds may avail themselves of the justifiable lack of knowledge exception and contrasts plaintiffs who are represented by a law firm that advertises twenty-five years of experience in the insurance industry. Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12 (1979) (finding ignorance of available coverage where the insured possessed a genuine, if misguided, belief that notice necessary to protect its' interest had been furnished); Jarka Corp. v. Am. Fid. & Cas. Co., 19 A.D.2d 141 (1st Dep't 1963) ("[W]here the question of timeliness of [ ] notice . . . by an additional insured to insurer is involved and the additional insured is not aware of the fact that he was covered under the policy being issued to the named insured, delay in giving such notice has been held excusable."). (Def. Mem. Summ. J. at 10; Def. Ex. 25.) While no court has deemed the identity of the insured as a relevant factor, the cases cited by defendant provide further support for the conclusion that plaintiffs cannot prevail on this exception. Plaintiffs knew that notice had not been furnished to defendant and were aware from the contract between Willie and Arch and the certificates of insurance that defendant's policy covered Willie, and Marc-Scot asserted the same.

15

responded is not known, if Garcia inquired whether Arch had applicable insurance coverage of Marc-Scot, or something to that effect, then Arch did not misrepresent the lack of coverage. The refusal of Arch's counsel to undertake the defense and indemnification of Marc-Scot in the tort action is consistent with the fact that Arch did not have a contractual obligation to name Marc-Scot as an additional insured. Arch did not have a duty under defendant's policy to facilitate the defense and indemnification in the tort action until May 2008, when Garcia added Willie as a defendant.

Plaintiffs' efforts to ascertain whether coverage existed and protect its interests lack reasonableness and diligence. Mt. Vernon Fire Ins. Co., 288 F. Supp. 2d at 311 ("Whether or not an insured's failure to provide timely notice to an insurer is reasonable under the circumstances is ordinarily a question of fact precluding summary judgment . . . However, a delay in notice may be unreasonable as a matter of law when no excuse for the delay is put forth or the proffered excuse is meritless.") Plaintiff's failure to provide timely notice to defendant cannot be excused. Plaintiffs are not entitled to a judgment as a matter of law on this issue.[5]

The failure of plaintiffs to timely notify defendant of the occurrence or tort action without reasonable excuse vitiates the insurance contract. Defendant may disclaim coverage. Defendant is entitled to judgment as a matter of law on this issue and the declaration that defendant has no obligation to defend or indemnify plaintiffs in the tort action.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court deny plaintiffs' motion for summary judgment and grant defendant's cross-motion for summary judgment.

---

[5] In light of my recommendation that the Court deny plaintiffs' motion for summary judgment on the ultimate issue of timely notice, I will not consider plaintiffs' request for the Court to deem the additional insured coverage under defendant's policy as primary coverage that must be exhausted prior to the implication of coverage under Great American's policy. (Pls. Mem. Summ. J. at 14.)

Specifically, I recommend that the Court dismiss the complaint and declare that defendant is not obligated to defend and indemnify plaintiffs or reimburse plaintiffs for the amounts expended in defense of the tort action because plaintiffs failed to timely notify defendant of the occurrence and suit without reasonable excuse. I hereby order plaintiffs to serve a copy of this Report and Recommendation on defendant and to file proof of service by ECF promptly. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of the date of entry of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

    SO ORDERED.

Dated: January 12, 2010
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE